MARK POE (S.B. #223714)
  mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
  rgaw@gawpoe.com
VICTOR MENG (S.B. #254102)
  vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

SETH T. COHEN (S.B. #223716)
scohen@colawnm.com
COHEN LAW FIRM, LLC
316 E. Marcy Street
Santa Fe, NM 87501
Telephone: (505) 466-5392
Facsimile: (505) 395-7540

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROMA MIKHA, INC. (d/b/a NEWPORT WINE & SPIRIT); NMRM, INC. (d/b/a SUNSET MARKET & LIQUOR); M&Y FAMILY, INC. (d/b/a MIKE'S LIQUOR & MARKET); F&D SANTEE MARKET, INC. (d/b/a SANTEE MARKET & LIQUOR); and TIMES MARKET AND LIQUOR, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SOUTHERN GLAZER'S WINE AND SPIRITS, LLC, <br><br> Defendant. | Case No. 8:22-cv-01187-FWS-ADS <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> Judge:    Hon. Fred. W. Slaughter <br> Courtroom: 10D |

Plaintiffs Roma Mikha, Inc.; NMRM, Inc.; M&Y Family, Inc.; F&D Santee Market, Inc., and Times Market and Liquor, Inc. (together, "Plaintiffs") allege as follows:

**JURISDICTIONAL STATEMENT**

1. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because some of Plaintiffs' claims arise under federal law.

2. The Court has supplemental jurisdiction of Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant Southern Glazer's Wine and Spirits, LLC resides in this district and is subject to the court's personal jurisdiction in this district with respect to this action.

4. This case is properly assigned to the Southern Division of this district pursuant to General Order No. 349 because Plaintiff Roma Mikha, Inc. is located in Newport Beach, California.

**INTRODUCTION**

5. The federal Robinson-Patman Act, 15 U.S.C. § 13 (the "RPA"), makes it illegal for distributors and manufacturers (known in RPA parlance as "suppliers") to charge higher prices to "disfavored" customers than the prices they charge to their "favored" customers. This illegal conduct is known in antitrust law as "price discrimination." As the Supreme Court explained in the seminal RPA precedent of *FTC v. Morton Salt Co.*:

> The legislative history of the Robinson-Patman Act makes it abundantly clear that Congress considered it to be an evil that a large buyer could secure a competitive advantage over a small buyer solely because of the large buyer's quantity purchasing ability. The Robinson-Patman Act was passed to deprive a large buyer of such advantages except to the extent that a lower price could be justified by reason of a seller's diminished costs due to quantity manufacture,

> delivery or sale, or by reason of the seller's good faith effort to meet a competitor's equally low price.

334 U.S. 37, 43 (1948).

6. In this case, Defendant Southern Glazer's Wine and Spirits, LLC ("Southern") is the exclusive California supplier of most of the top brands of liquor on the market, including such mainstays as Hennessy, Tanqueray, Bacardi, Captain Morgan, Grey Goose, Jameson, and Johnnie Walker. For years, Southern has continuously violated the RPA by selling those and other brands of liquor to retail chain stores like CVS, Walgreens, Costco, SuperValu, and Kroger (hereafter "National Chains") at prices that are far lower than Southern charges to those giants' competitors for retail-level liquor sales in California, among whom are the named-plaintiffs in this case, and all members of the proposed class they seek to represent.

7. Plaintiffs and all class members compete directly with the National Chains for liquor sales to end consumers. Plaintiffs and the class have lost millions of dollars in liquor sales over the preceding four years, as a result of Southern's illegal discrimination.

8. Plaintiffs and the class bring this action to recover those damages, and to obtain an injunction prohibiting further price discrimination against them.

## STATUTORY BACKGROUND

9. The federal Robinson-Patman Act, 15 U.S.C. § 13, was enacted because Congress considered it to be an evil that chain stores could use their buying power to secure a competitive advantage over their non-chain competitors through receiving special prices, discounts, rebates, allowances, or other forms of price discrimination offered by the supplier, while the supplier withheld those same pricing advantages from "mom-and-pop" competitors.

10. In particular, Congress was concerned that large corporations could take advantage of their greater purchasing power to demand specially discounted

pricing from suppliers, and leverage that advantage to undercut and drive out of business the local, community-based businesses with whom they compete. As the last fifty years of American commerce have shown, this concern was well-founded.

11. Accordingly, the Robinson-Patman Act forbids all sellers from discriminating in price among different purchasers of commodities of like grade and quality, where those sales are made in interstate commerce.

12. The California state legislature similarly viewed with concern the impact that a large corporation's ability to demand (and a supplier's willingness to grant) exclusive, favorable pricing would have on competition between giant purchasers and the local, community-based businesses with whom those giants compete.

13. As a result, the California state legislature passed the Unfair Practices Act, Cal. Bus. & Prof. Code § 17045, which forbids a seller from secretly offering rebates, allowances, commissions or other unearned discounts to some buyers, to the exclusion of other buyers.

14. At the heart of both the Robinson-Patman Act and the Unfair Practices Act is the recognition that small businesses are a critical and necessary component of the American economy. Their continued existence and vitality provides healthy competition to large chains, to the benefit of all consumers. As eloquently stated by Representative Wright Patman, the eponymous sponsor of the Act:

> In the field of merchandise distribution a Goliath stands against divided forces, plying a powerful weapon with a skillful hand against the vulnerable weaknesses of his opponents. The Goliath is the huge chain stores sapping the civic life of local communities with an absentee overlordship, draining off their earnings to his coffers, and reducing their independent business men to employees or to idleness.

*Remarks of Rep. Wright Patman introducing H.R. No. 8442*, 79 Cong. Rec. 9077 (June 11, 1935). One need look no further than the National Chains favored by

Southern to witness firsthand "huge chain stores sapping the civic life of local communities with an absentee overlordship."

15. Plaintiffs are exactly the type of local, family-owned businesses that Congress and the California state legislature sought to protect with the Robinson-Patman Act and the Unfair Trade Practices Act. They are small, independent, family-owned businesses that operate between one and a handful of liquor stores in California. The favored National Chains compete with Plaintiffs for sales of the exact same bottles of liquor, to the exact same end consumers.

## HARM TO COMPETITION

16. The Robinson-Patman Act's purpose of protecting competition by means of protecting individual competitors makes it unique among the federal antitrust laws. That distinction is expressly set forth in Ninth Circuit precedent:

> We are persuaded that the language that the Robinson-Patman Act added to § 2(a) of the Clayton Act — "to injure, destroy, or prevent competition" — expresses Congressional intent to protect individual competitors, not just market competition, from the effects of price discrimination. As we said in *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1446 n. 18 (9th Cir.1995) (dicta), "[t]he purpose of this passage was to relieve secondary-line plaintiffs — small retailers who are disfavored by discriminating suppliers — from having to prove harm to competition marketwide, allowing them instead to impose liability simply by proving effects to individual competitors."

*Chroma Lighting v. GTE Products Corp.*, 111 F.3d 653, 657 (9th Cir. 1997).

17. The *Chroma Lighting* court summarized: "We hold that in a secondary-line Robinson-Patman case, the *Morton Salt* inference that competitive injury to individual buyers harms competition generally may not be overcome by proof of no harm to competition." *Id.* at 658.

18. The precedent notwithstanding, the competitive landscape and individual consumers themselves have *also* been harmed by Southern's illegal price discrimination. The discriminatorily high prices charged to Plaintiffs and the class are necessarily passed on (at least in part) to the end consumers who purchase from those stores. Those end customers thus necessarily paid more for the same products than they would have paid had Southern not discriminated against Plaintiffs, but had instead sold to Plaintiffs and the class at the same prices offered to the National Chains. Had Southern complied with the Robinson-Patman Act and California law, those end consumers would have paid similarly low prices at their local corner store as they pay to the National Chains.

19. Plaintiffs and the class are entitled to treble damages, restitution, and injunctive relief for the discrimination levied against them by Southern.

**PARTIES**

20. Plaintiff Roma Mikha, Inc. operates a liquor and convenience store that does business as Newport Wine & Spirit. It is a California corporation with its principal place of business in Newport Beach, California.

21. Plaintiff NMRM, Inc. operates a liquor and convenience store that does business as Sunset Market & Liquor. It is a California corporation with its principal place of business in Chula Vista, California.

22. Plaintiff M&Y Family, Inc. operates a liquor and convenience store that does business as Mike's Liquor & Market. It is a California corporation with its principal place of business in Oceanside, California.

23. Plaintiff F&D Santee Market, Inc. operates a liquor and convenience store that does business as Santee Market & Liquor. It is a California corporation with its principal place of business in Santee, California.

24. Plaintiff Times Market and Liquor, Inc. operates a liquor and convenience store that does business as Times Market & Liquor. It is a California corporation with its principal place of business in Lakeside, California.

25. Defendant Southern Glazer's Wine and Spirits, LLC ("Southern") is a Delaware Corporation with its principal place of business in Miami, Florida.

## FACTUAL ALLEGATIONS

### Plaintiffs' Business

26. Plaintiffs and all members of the class are in the business of operating liquor stores, from which they sell liquor and assorted other beverages and consumer packaged goods. Plaintiffs purchase most of the liquor they sell directly from Southern, which is the exclusive California distributor of hundreds of types of liquor, including such mainstays as Hennessy, Tanqueray, Bacardi, Captain Morgan, Grey Goose, Jameson, and Johnnie Walker. The liquor at issue is all manufactured overseas or out-of-state, and Plaintiffs make payments for that liquor to the Florida-based Southern, such that all of the sales at issue in this case were made in interstate commerce.

27. Plaintiffs and members of the class purchase liquor directly from Southern and sell it to end consumers. The bottles Plaintiffs and members of the class purchase from Southern are identical to the bottles that Southern sells to the National Chains. Plaintiffs purchase liquor from Southern through one of two ways: either by placing orders directly with the Southern representative assigned to their store, or through an online portal called "Proof," found at shop.proof.com. Because purchases made through the website are subject to an arbitration clause, this actions concerns only the purchases that Plaintiffs and members of the class made other than through the Proof website.

28. Plaintiffs and all members of the class are located in the same geographical area as one or more outlets of one or more of the National Chains, and are in actual competition with those favored National Chains for sales of liquor to the same pool of end consumers.

**Southern Has Discriminated Against Plaintiffs and All Members of the Class in Favor of the National Chains for Years**

29. Southern has institutionalized its discriminatory pricing through rigid classifications of its customers. The National Chains are classified as "Off Premise National Chain" accounts, while Plaintiffs and all members of the class are classified as "Off Premise Independent Broad Market," accounts. Customers in the National Chains classification are all given better pricing terms than all customers in the Independent Broad Market classification.

30. Southern's price discrimination is seen from a simple comparison of the prices that Plaintiffs and the members of the class in the Independent Broad Market classification must pay to Southern as the *cost* of the liquor they sell, in comparison to the prices at which the National Chains *sell* identical bottles of that same liquor that they have purchased from Southern.

31. For example, in March 2022, California Albertson's locations were selling 750 ml bottles of Johnnie Walker Black for $19.99, while Southern contemporaneously sold that same product to Plaintiffs and all members of the class at $22.25, no matter how many cases they purchased.

32. Similarly, California Albertson's locations were selling 750 ml bottles of Grey Goose vodka for $17.99 each, while the best price Southern contemporaneously offered to Plaintiffs and all members of the class was $25.08, no matter how many cases they purchased.

33. Similarly, in May 2022 California Ralph's locations were selling 750 ml bottles of Absolut Vodka for $9.99 each, while the best price Southern contemporaneously offered to Plaintiffs and all members of the class was $13.83 at the highest volume-based discount offered to them, no matter how many cases. Likewise, Ralph's was selling 750 ml bottles of Jagermeister at $12.99, while the best price contemporaneously offered to Plaintiffs directly from Southern was $18.89, no matter how many cases

34. Similarly in March, Costco stores in California were selling half-gallon bottles of Jim Beam at $19.99, while Southern's contemporaneous price to Plaintiffs and all members of the class, for the exact same product, was $22.46.

35. The foregoing are only exemplary instances of the price discrimination Plaintiffs face in comparison to the National Chains. Further examples can be found in essentially every flier in which the National Chains have advertised their liquor prices in California over at least the last four years. On information and belief, Southern charges illegally high prices to Plaintiffs and the members of the class—in comparison with the prices it charges to their competitor National Chains—not only with respect to these advertised prices, but with respect to *all* of the liquors it distributes in California.

36. In every one of those situations, the only reason the National Chain is able to sell identical products at prices that are below Plaintiffs' acquisition cost is the illegally favorable pricing that Southern gives to those National Chains.

37. In short, the National Chains are able to *sell* identical bottles of liquor to end consumers at the same or lower prices than Plaintiffs must *pay* to acquire those same bottles from Southern. This is not a matter of the National Chains using alcohol as a loss leader, as it is illegal under California law for retailers to sell liquor at prices below those retailers' acquisition cost. B&P Code § 17043.

38. Accordingly, even though Southern keeps its pricing to the National Chains secret from the independent retailers who compete with those chains, it is a matter of inescapable mathematics that Southern charges discriminatorily higher prices to Plaintiffs and the members of the class than it charges to the National Chains. And because Plaintiffs and all members of the class are charged illegally higher prices than their chain-store competitors, all end consumers who patronize Plaintiffs' businesses necessarily share in paying those illegally high prices.

39. Southern's discriminatorily high prices to Plaintiffs and the class are not cost-justified, because there are no significant differences in the methods or

quantities in which it sells and delivers liquor to independent markets versus the individual store locations of the National Chains. That is, Southern incurs exactly the same costs of delivery to the chains as to Plaintiffs and members of the class, using the same fleet of trucks that makes individual stops at each store, whether chain or independent.

40. Faced with a cost of goods for liquor that is significantly higher than that charged to the National Chains, Plaintiffs and all members of the class have been injured through losing customers and losing sales, and by making lower profits per bottle than they would make if they were given access to the same low pricing offered to the National Chains.

41. Southern has kept its precise prices to National Chains secret from Plaintiffs and all members of the class they seek to represent. Indeed, even as this litigation progresses, Plaintiffs anticipate that Southern will take aggressive steps (such as demanding an "Attorneys' Eyes Only" protective order), to keep Plaintiffs in the dark about the secret terms and deals that they gave, and continue to give, to the National Chains.

**CLASS ACTION ALLEGATIONS**

42. Plaintiffs bring this action on behalf of themselves and the class, defined as:

> All California retail businesses in Southern's "Off Premises Independent Broad Market" channel that purchased one or more bottles of liquor from Southern (other than through Southern's "Proof" website) for re-sale at a discriminatorily higher price than Southern contemporaneously charged to California retail businesses in its "Off Premises National Chains" channel, during the applicable limitations period.

43. Through the process of seeking and obtaining class certification, Plaintiffs reserve the right to amend the definition of the proposed class, as

appropriate, including by seeking certification of one or more "issue classes" under Federal Rule of Civil Procedure 23(c)(4).

44. Excluded from the class are any businesses owned by the officers, directors, and employees of Southern, any judicial officer presiding over this action, and the members of his or her immediate family and judicial staff.

45. This action is brought and may properly be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

46. The class members are so numerous that joinder of all members is impracticable. There are hundreds of liquor stores classified as "Off Premises Independent Broad Market" by Southern that currently purchase liquor from Southern at discriminatorily inflated prices. The precise number and identity of the members of the class can be obtained from the records of Southern.

47. There are numerous questions of law and fact common to the members of the class which predominate over any questions affecting only individual members, including: (a) whether Southern charged higher prices to its "Off Premises Independent Broad Market" channel than to its "National Chains" channel; (b) whether those sales were reasonably contemporaneous; (c) which liquor products were subject to the discriminatory pricing; (d) whether Southern attempted to keep its favored pricing to the National Chains secret from Plaintiffs and members of the class; (e) whether the discrimination against Plaintiffs and the class was sufficient to raise the *Morton Salt* inference of harm to competition; and (g) whether Plaintiffs and the class are entitled to damages, restitution and injunctive relief for these violations.

### FIRST CLAIM FOR RELIEF
**(Robinson-Patman Act, 15 U.S.C § 13(a))**

48. Plaintiffs hereby re-incorporate and re-allege all the preceding paragraphs as if fully set forth herein.

49. Southern engaged in price discrimination against Plaintiffs and the class in violation of section 2(a) of the Robinson-Patman Act by charging them higher "list" and "net" prices for the liquor brands Southern distributes, compared to both the "list" and "net" prices that Southern charges to its National Chain accounts for identical bottles of liquor. The pricing terms that Southern offered to the National Chains were not offered nor otherwise available to Plaintiffs and the class.

50. Southern's price favoritism to the National Chains is not justified by any cost savings it realized in conjunction with those sales. That is, Southern does not realize any significant cost savings in selling and delivering liquor to the National Chains, because it delivers to those chains' individual locations in exactly the same manner that it delivers to the individual locations of Plaintiffs and the class. Indeed, on information and belief Southern incurs higher costs in supplying the National Chains, because it also employs a large staff of "merchandisers" to stock, take inventory, and place point-of-sale materials at those locations, a cost that it does not proportionately incur in selling liquor to Plaintiffs and the members of the class.

51. Plaintiffs and the members of the class are all located in the same geographical area as one or more outlets of the favored National Chains, and compete with those favored customers in that they all sell liquor solely on a retail basis, to an identical pool of end consumers.

52. Southern's sales of liquor to Plaintiffs and the members of the class on the one hand, and to the National Chains on the other, have continuously been made on a discriminatory basis over the entire four years preceding the filing of this complaint.

53. The effect of Southern's acts of price discrimination has been to substantially harm competition between the giant National Chains and the family-owned Plaintiffs and members of the class.

54. This price discrimination has in turn caused economic harm to the customers of Plaintiffs and the members of the class, by causing them to pay higher prices for identical bottles of liquor than they would have paid had Plaintiffs and members of the class received non-discriminatory pricing on par with the National Chains.

55. The discriminatory sales at issue have all been made in interstate commerce, and were all made regularly throughout the preceding four years, rendering them reasonably contemporaneous.

56. Plaintiffs and the members of the class have been damaged by Southern's discrimination through losing customers to the National Chains, by their inability to be price-competitive with the National Chains so as to attract new customers, by making lower profits on their existing sales, and by selling lower volumes of liquor than they would have sold in the absence of the discrimination.

57. Plaintiffs and the members of the class are further entitled to injunctive relief to prohibit future discrimination by Southern against them.

58. Plaintiffs also seek attorneys' fees and costs, as allowed under law.

**SECOND CLAIM FOR RELIEF**
**(Robinson-Patman Act, 15 U.S.C. § 13(e))**

59. Plaintiffs hereby re-incorporate and re-allege all the preceding paragraphs as if fully set forth herein.

60. In addition to the basic price discrimination, Southern provides discriminatory services to the National Chains that it withholds from Plaintiffs and all members of the class, in violation of section 2(e) of the Robinson-Patman Act.

61. Those discriminatory services take the form of Southern employing and dispatching teams of dedicated employees to perform "merchandising" services at the individual locations of the National Chains, including such things as taking inventory, stocking products on shelves, building and maintaining displays, and installing promotional point-of-sale materials. Southern does not provide

comparable promotional services to Plaintiffs or the other members of the class, all of whom compete with the National Chains for liquor sales to the same pool of end consumers.

62. Plaintiffs and the class have been damaged by Southern's discriminatory provision of services because those services both reduce the cost of the National Chains' liquor business, while boosting their liquor sales. The discrimination accordingly results in lost sales and profits to Plaintiffs and the class, compared to what they would experience if a similar kind and degree of promotional services were provided to them.

63. Plaintiffs and the members of the class are further entitled to injunctive relief to prohibit future discrimination in Southern's provision of promotional services.

64. Plaintiffs also seek attorneys' fees and costs, as allowed under law.

### THIRD CLAIM FOR RELIEF
**(California Unfair Practices Act, Cal. Bus. & Prof. Code § 17045)**

65. Plaintiffs hereby re-incorporate and re-allege all the preceding paragraphs as if fully set forth herein.

66. The pricing, discounts, rebates, and other promotional allowances offered by Southern to the National Chains were secret and undisclosed to Plaintiffs. On information and belief, Southern takes elaborate steps to conceal that information from Plaintiffs and members of the class, including by instructing its sales staff not to disclose that pricing.

67. The effect of such price discrimination has been to substantially harm competition among Plaintiffs and the members of the class, on the one hand, and the National Chains on the other. Those two groups of Southern customers directly compete for retail sales of liquor to an identical group of end consumers.

68. This price discrimination has in turn caused economic harm to the customers of Plaintiffs and members of the class, by causing them to pay higher

prices for identical bottles of liquor than they would have paid had Southern not overcharged Plaintiffs and members of the class for those bottles.

69. Plaintiffs and the members of the class have been damaged by Southern's secret discriminatory pricing to the National Chains, through losing customers to the National Chains, by their inability to be price-competitive with the National Chains and thereby attract new customers, by making lower profits on their existing sales, and by selling lower volumes of liquor than they would have sold in the absence of the discrimination.

70. Plaintiffs and the members of the class are further entitled to injunctive relief to prohibit future secret pricing and discrimination by Southern against them.

71. Plaintiffs also seek attorneys' fees and costs, as allowed under law.

## FOURTH CLAIM FOR RELIEF
**(California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.)**

72. Plaintiffs hereby re-incorporate and re-allege all the preceding paragraphs as if fully set forth herein.

73. Southern's actions are in violation of the federal Robinson-Patman Act and the California Unfair Practices Act, and therefore constitute unlawful and unfair conduct within the meaning of California's unfair competition law.

74. Plaintiffs and members of the class are entitled to restitution of the amounts they overpaid for liquor compared to the National Chains over the preceding four years, and are further entitled to injunctive relief under California's unfair competition law.

## PRAYER

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1. For judgment against Defendant Southern Glazer's Wine and Spirits, LLC;
2. For compensatory and treble damages;
3. For restitution to Plaintiffs;

1. 4. For preliminary and permanent injunctive relief against the price discrimination alleged herein;
2. 5. For attorneys' fees;
3. 6. For costs; and
4. 7. For such other and further relief as the Court deems just and proper.

Dated: September 19, 2022

Seth T. Cohen
COHEN LAW FIRM, LLC

Mark Poe
Randolph Gaw
Victor Meng
GAW | POE LLP

By:  s/ *Mark Poe*
Mark Poe
Attorneys for Plaintiffs